IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALIYAH MEADOWS, as Personal Representative of the Estate of Tias Dequan Cobb, deceased,<br>Plaintiff,<br><br>v.<br><br>PEYTON OAS, individually and in his official capacity as a police officer for the City of Opelika, Alabama; CITY OF OPELIKA, ALABAMA,<br>Defendants. | CASE NO. 2:26-cv-00661 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Aliyah Meadows, as Personal Representative of the Estate of Tias Dequan Cobb, by and through undersigned counsel, brings this Complaint against Defendants Peyton Oas ("Officer Oas" or the "Defendant Oas"), the City of Opelika, Alabama (the "City"), and alleges as follows:

## I. PRELIMINARY STATEMENT

1. This is a civil rights and wrongful death action arising from the fatal shooting of Tias Cobb by Officer Peyton Oas, a police officer employed by the City of Opelika, Alabama, on or about August 18, 2024, at or near the Century Park Apartments, 1801 Century Boulevard, in Opelika, Alabama.

2. Plaintiff alleges that the Defendant Oas used deadly force against Tias Cobb that was objectively unreasonable under the totality of the circumstances, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and that the events and tactical decisions leading up to the shooting — not merely the instant the trigger was pulled — were themselves unreasonable and directly contributed to the circumstances leading to the use of deadly force.

3. Plaintiff further asserts related claims under Alabama law, including wrongful death, assault and battery, and negligence/wantonness, against the Defendant Oas, the City, and Defendants John Does 1-10.

4. Plaintiff seeks compensatory damages, punitive damages to the extent allowed by law, costs, attorneys' fees under 42 U.S.C. § 1988, and such other relief as the Court deems just and proper.

## **II. JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), as this action arises under

42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise out of the same case or controversy as Plaintiff's federal claims and derive from a common nucleus of operative fact.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Lee County, Alabama, which lies within this district and division.

8. Plaintiff has satisfied all conditions precedent to filing this action, including timely presentment of a sworn statement of claim to the City of Opelika pursuant to Ala. Code §§ 11-47-23 and 11-47-192, within six months of the date the cause of action accrued.

9. This action is timely filed, as the claims have a two-year statute of limitations. Ala. Code § 6-2-38(l); Ala. Code § 6-5-410(d).

## III. PARTIES

10. Plaintiff Aliyah Meadows is an adult resident citizen of Lee County, Alabama. She is the mother and legal guardian of T.C., the minor son of

Tias Dequan Cobb. She has been duly appointed as the Personal Representative of the Estate of Tias Dequan Cobb by the Probate Court of Lee County, Alabama. Plaintiff brings the wrongful death claim pursuant to Ala. Code § 6-5-410 and the federal claims on behalf of Tias Dequan Cobb's estate and statutory beneficiaries, namely their son T.C.

11. Defendant Peyton Oas was at all relevant times a duly sworn police officer employed by the City of Opelika, Alabama, acting under color of state law within the meaning of 42 U.S.C. § 1983. Defendant Oas is sued in his individual capacity for damages arising from his unconstitutional conduct.

12. Defendant City of Opelika, Alabama, is a municipal corporation organized under the laws of the State of Alabama and is a "person" subject to suit under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). At all relevant times, the City operated, funded, supervised, and controlled the Opelika Police Department, including the training, supervision, and discipline of its officers.

# IV. FACTUAL ALLEGATIONS

## Introduction

13. Tias Dequan Cobb ("Tias"), a native of Auburn, Alabama, was a few days shy of his twenty-sixth birthday when he was shot and killed by Opelika Police Officer Peyton Oas.

14. Tias Cobb left behind his only child, T.C.—now seven years old—who he loved more than anything:



15. Tias and T.C.'s mother, Plaintiff Aliyah Meadows, were in a relationship for most of T.C.'s life.

16. Tias also left behind two brothers, a father, and many family and friends who loved him dearly.

17. Tias graduated from Auburn High School.

18. Tias was a family man. He stayed out of trouble and most enjoyed being around his son.

19. Tias loved to go to the beach with his family, and he loved playing football.

20. Before he died, Tias had obtained his Commercial Driver's License and planned to go into business with his cousin. He was looking forward to his future.

21. Like many fellow Alabamians, Tias exercised his constitutional right to own and carry a firearm.

**Circumstances Surrounding Tias Cobb's Death**

22. On the evening of Saturday, August 17, 2024, Tias went to a local nightclub with his friends, including his older brother Keyare Cobb.

23. Tias and Keyare Cobb decided to leave the nightclub after an altercation broke out between other individuals.

24. Keyare departed in a car with his girlfriend, D'Asia Shambria Hunter. Tias left in a car with other friends.

25. Keyare and Ms. Hunter went to pick up their child at the Century Park Apartment complex where Ms. Hunter's mother lived. Ms. Hunter's mother, Quintina Baker, was babysitting for them that evening.

26. Keyare wanted to spend more time with his brother and friends, but Ms. Hunter wanted him to stay home with her and the baby.

27. Keyare ultimately called his brother Tias to pick him up from Ms. Hunter's mother's house.

28. At or around 2:47 A.M., on Sunday, August 18, 2024, Quintina Baker called 911. Ms. Baker indicated that her daughter was worried someone followed her home from the nightclub.

29. Ms. Baker resided in Apartment 603 at the Century Park Apartment complex located on 1801 Century Boulevard, in Opelika, Alabama.

30. At approximately 2:52 A.M. on August 18, 2024, Opelika Police Officer Peyton Oas, by himself, responded to the 911 call at 1801 Century Boulevard.

31. When Officer Oas arrived, he approached Ms. Baker's daughter, Ms. Hunter, who was outside the apartment in the parking lot talking with Keyare.

32. Officer Oas asked Ms. Hunter who was following her. Ms. Hunter responded three times that no one was following her and informed Officer Oas that she did not know what he was talking about.

33. Officer Oas then spoke to Keyare, telling him to go inside. Officer Oas and Keyare then fist bumped each other, and Officer Oas left.

34. At approximately 3:02 A.M., Ms. Baker called 911 again indicating that she called earlier but law enforcement never came. She repeated her concern that her daughter was at a nightclub—this time saying a shooting occurred at the nightclub—and said those people were on the way to her home.

35. In light of the second 911 call, Officer Oas was instructed to return to the Century Park Apartment complex to respond to Ms. Baker's complaints.

36. In the meantime, Tias was on his way to pick up Keyare from the Century Park Apartments. Tias arrived before Officer Oas.

37. Officer Oas arrived at the Century Park Apartment complex at approximately 3:07 A.M.

38. Upon information and belief, Officer Oas had not called for backup.

39. Officer Oas's body camera was on at the time he exited the car. It showed that when he arrived, Officer Oas was alone.

40. Officer Oas approached several individuals standing in the parking lot near cars.

41. One individual—a woman with pink hair—told Officer Oas that it was "not us" but "them" and pointed in the opposite direction of Ms. Baker's apartment.

42. Apparently ignoring that comment, Officer Oas headed toward Ms. Baker's apartment.

43. Officer Oas remained by himself, without calling for backup.

44. As Officer Oas approached Ms. Baker's apartment, Tias walked away from the apartment on the opposite sidewalk.

45. Tias was carrying a gun, as he is legally authorized to do under Alabama law.

46. Footage from a doorbell camera shows Tias holding the gun along his side—the side opposite of where Officer Oas was approaching.

47. Tias did not brandish the gun. In fact, Tias did not interact with Officer Oas. He walked in the opposite direction from Officer Oas.

48. Tias was not committing a crime nor was he evading arrest. He was walking toward the parking lot.

49. Upon information and belief, Officer Oas struck Tias —without justification or probable cause—causing him to fall to the ground.

50. Officer Oas was on top of Tias, who now no longer had a gun in his hand.

51. Tias posed no threat to Officer Oas or anyone around him.

52. While Officer Oas was on top of Tias, he shouted several times, “drop the gun” or “drop the f**king gun.” But Tias’s gun was lying on the ground; it was not in his hand.

53. Despite Officer Oas screaming, Tias did not respond in kind. Instead, Tias calmly said “hey man” or “hey bro” several times.

54. Then, without any warning that he planned to discharge his weapon, Officer Oas fatally Tias three times in the chest.

55. Despite fatally shooting Tias, Officer Oas yelled—once again—“drop the gun.”

56. At no time during the interaction did Tias verbally or physically threaten Officer Oas.

57. Tias died as a result of the gunshot wounds inflicted by Officer Oas.

58. Officer Oas stood over Tias lying on the ground, watching him take his last breath.

59. After Tias died, another Opelika police officer joined Officer Oas near Tias's body.

60. At that point, Officer Oas asked the other officer to "cover" him. Tias was not moving or breathing.

61. Officer Oas then flipped Tias's unresponsive body over onto his stomach.

62. Officer Oas proceeded to handcuff Tias's arms behind his back. Officer Oas had to move Tias's limbs, which showed no sign of life or movement.

63. Once Officer Oas finished handcuffing Tias's lifeless body, he flipped Tias over again, leaving Tias's body on his back with visible gunshot wounds in his chest area.

64. Officer Oas then walked away from Tias's body, at which time he told another officer several times, "I'm good."

65. Under the totality of the circumstances — including the events and decisions in the moments and minutes leading up to the shooting — a reasonable officer in Defendant Oas's position would not have believed that Tias posed an immediate threat of death or serious physical harm justifying the use of deadly force.

**City of Opelika Police Department**

66. On information and belief, the City of Opelika failed to adequately train and supervise its officers, including Officer Oas, in de-escalation techniques, crisis intervention, and the constitutional limits on the use of excessive and deadly force, and/or maintained policies, practices, or customs that were the moving force behind the constitutional violations alleged herein.

67. Approximately two months before the killing of Tias Cobb, an Opelika Police Officer shot and killed another black man, Damion Ladeal Jones, demonstrating a lack of proper training in de-escalation techniques, crisis intervention, and the constitutional limits on the use of excessive and deadly force.

68. The circumstances related to Officer Oas's unlawful killing of Tias Cobb demonstrate a lack of proper training in de-escalation techniques, crisis intervention, and the constitutional limits on the use of excessive and deadly force.

## V. CLAIMS FOR RELIEF

### COUNT I — 42 U.S.C. § 1983: EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT (Against Officer Oas, Individually)

69. Plaintiff incorporates by reference paragraphs 1-66 above as if fully set forth herein.

70. At all relevant times, Officer Oas acted under color of state law within the meaning of 42 U.S.C. § 1983.

71. Tias Cobb had a clearly established right under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, to be free from the use of excessive, objectively unreasonable, and deadly force during a seizure.

72. Defendant Oas's use of excessive and deadly force against Tias Cobb was objectively unreasonable under the totality of the circumstances and was not justified by any immediate threat of death or serious bodily injury to the officer or others.

73. This right was clearly established at the time of the shooting such that no reasonable officer in Defendant Oas's position could have believed the use of excessive and deadly force under these circumstances was lawful, and

qualified immunity therefore does not shield the Defendant Oas from liability.

74. As a direct and proximate result of Defendant Oas's unconstitutional use of excessive and deadly force, Tias Cobb suffered conscious pain and suffering prior to death, and ultimately died, and Tias Cobb's estate and statutory beneficiaries have suffered damages as set forth herein.

75. Defendant Oas's conduct was willful, wanton, malicious, and/or in reckless disregard of Tias Cobb's clearly established constitutional rights, entitling Plaintiff to an award of punitive damages under § 1983.

**COUNT II — WRONGFUL DEATH (Ala. Code § 6-5-410)**

**(Against Officer Oas and the City of Opelika)**

76. Plaintiff incorporates by reference paragraphs 1-66 above as if fully set forth herein.

77. Under Alabama law, a personal representative may recover damages for the wrongful act, omission, or negligence of any person that causes the death of Tias Cobb, provided Tias Cobb could have maintained an action for the underlying wrongful conduct had death not resulted. Ala. Code § 6-5-410(a).

78. Defendant Oas's use of deadly force against Tias Cobb, and his conduct leading up to that use of force, constituted a wrongful act and/or negligence that proximately caused Tias Cobb's death.

79. This action is brought within two years of Tias Cobb's death, as required by Ala. Code § 6-5-410(d).

80. Plaintiff is entitled to recover such punitive damages as the jury may assess, as Alabama's wrongful death statute is punitive in nature.

81. To the extent Defendant Oas's conduct is found to fall outside the exercise of judgment entitled to state-agent immunity — including because he acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law — he is not immune from this claim.

**COUNT III — 42 U.S.C. § 1983: MUNICIPAL LIABILITY (*Monell*)**

**(Against the City of Opelika)**

82. Plaintiff incorporates by reference paragraphs 1-69 above as if fully set forth herein.

83. Defendant Oas's violation of Tias Cobb's constitutional rights was caused, in part, by the unconstitutional and deliberately indifferent customs and practices of the City of Opelika. These § 1983 claims against the City of Opelika are not brought pursuant to the doctrine of respondeat superior, but

pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny. The City of Opelika is liable under 42 U.S.C. § 1983 because the constitutional violations described herein were caused by an official policy, an unofficial custom or practice, a failure to train, and/or a failure to supervise that amounted to deliberate indifference to the constitutional rights of persons, including Tias Cobb, with whom City police officers came and come into contact.

84. The City's policies, customs, and/or failures to train were the moving force behind the violation of Tias Cobb's constitutional rights and were a direct and proximate cause of Tias Cobb's death.

## **COUNT IV — ASSAULT AND BATTERY (Against Officer Oas)**

85. Plaintiff incorporates by reference paragraphs 1-66 above as if fully set forth herein.

86. Defendant Oas intentionally shot Tias Cobb without legal justification placing Tias Cobb in reasonable apprehension of imminent harmful contact and subjecting Tias Cobb to harmful and offensive contact without consent.

87. Under Alabama law, a police officer who uses force in excess of what is reasonably necessary to effect an arrest or protect himself or others commits

an assault and battery, notwithstanding his status as a law enforcement officer.

88. As a direct and proximate result of Officer Oas's assault and battery, Tias Cobb suffered fatal injuries, and Plaintiff has suffered damages recoverable through the wrongful death statute.

## **COUNT V — NEGLIGENCE AND WANTONNESS**

## **(Against Officer Oas and the City of Opelika)**

89. Plaintiff incorporates by reference paragraphs 1-66 above as if fully set forth herein.

90. Defendant Oas owed Tias Cobb a duty to exercise reasonable care in the use of force, in his tactical approach to the encounter, and in assessing the level of threat, if any, posed by Tias Cobb.

91. Defendant Oas breached that duty by, among other things, failing to use available less-lethal alternatives, failing to give an adequate warning where feasible, and/or negligently or wantonly discharging his firearm.

92. Alternatively, and to the extent Defendant Oas's conduct was in conscious disregard of Tias Cobb's rights and safety, such conduct constituted wantonness under Alabama law.

93. As a direct and proximate result of Defendant Oas's negligence and/or wantonness, Tias Cobb died, entitling Plaintiff to recover under Ala. Code § 6-5-410.

94. The City of Opelika is liable for the negligent and/or wanton acts of its officers under principles of respondeat superior to the extent not barred by applicable municipal immunity provisions, and/or directly liable for its own negligent hiring, training, supervision, and retention of Defendant Oas.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally where appropriate, and award:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages against the Defendant Oas, to the fullest extent permitted by law, on Plaintiff's federal and state-law claims;

C. Pre-judgment and post-judgment interest as allowed by law;

D. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

E. A trial by jury on all issues so triable; and

F. Such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,
/s/*Joseph Mitchell McGuire*

Joseph Mitchell McGuire (ASB-8317-S69M)
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000 office
334-517-1327 fax
jmcguire@mandabusinesslaw.com